■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v HERBERT PITT, Also Known as HUGH BROWN, Appellant.—Judgment, Supreme Court, Bronx County, rendered December 16, 1977, convicting defendant following a jury trial of criminal possession of a weapon in the third degree and sentencing him to an indeterminate term of two and one-third to seven years, reversed, on the law and as a matter of discretion in the interest of justice, and the case remanded for a new trial on that count. Defendant was indicted with codefendant Donald MacIntosh for murder in the second degree and criminal possession of a weapon in the second degree in connection with the death of one Anthony Robinson on November 26, 1976. They were acquitted on these counts and on a charge of manslaughter in the first degree, which had been submitted as a lesser included offense of murder.

The jury returned a guilty verdict only on criminal possession of a weapon in the third degree, submitted on request of defendants as a lesser included offense of criminal possession of a weapon in the second degree. The relevant facts have been fully set forth in our memorandum reversing the conviction of the codefendant *(People v MacIntosh,* 70 AD2d 554). For substantially the same reasons, there must be a reversal here. The trial court appropriately charged the jury on the law with respect to murder, manslaughter and criminal possession of a weapon in the second degree. Following agreement between the court and counsel, the jury was instructed as to possession of a weapon in the second degree to consider only whether defendants were in possession of the .45 caliber automatic weapon in the park on November 26, 1976, the date of the shooting. However, in instructing on the lesser included offense of criminal possession of a weapon in the third degree, the court charged the jury as follows: "You may find a defendant guilty of criminal possession of a weapon in the third degree if there is proof beyond a reasonable doubt that the defendant possessed any loaded firearm; mere possession is sufficient. There is no requirement to prove that the defendant intended to use this implement unlawfully against another." As we found in reversing the conviction of the codefendant MacIntosh, the instruction, although correct in the abstract, may have resulted in confusion by conveying to the jurors that, in considering the charge of criminal possession of a weapon in the third degree, they might consider whether defendant was in possession of the .45 caliber automatic, either at the apartment at 165th Street or at the apartment at 28 Clinton Place. The only relevant possession under the indictment and under the agreement reached between the court and counsel was possession of the .45 caliber automatic in the park on November 26, 1976. Therefore, we find improper the implication created by the charge that the jury could consider possession of that weapon either at the 165th Street apartment on November 26, 1976 or at the Clinton Place apartment on December 24, 1976. As noted in *MacIntosh's* case, the ambiguity in the charge as to him related not only as to whether he was in possession of a weapon at the 165th Street apartment or in the park on November 26, 1976 or at the Clinton Place apartment on December 24, 1976, but also as to whether the weapon intended was the .38 caliber revolver or the .45 caliber automatic. Although the proof with respect to defendant Pitt related only to the .45 caliber automatic, we nevertheless find the charge ambiguous since it did not appropriately restrict the jury to considering only whether he was in possession of that weapon in the park on the day of the shooting. The jurors may have concluded that they could convict upon a finding that Pitt was in possession of the .45 caliber automatic either at the 165th Street apartment or at the Clinton Place apartment although neither possession was the subject of the indictment. Since the potential for confusion, albeit inadvertent, may have infringed upon defendant's right to a fair trial, we have concluded that the interests of justice require that the matter be remanded for a new trial. Concur—Fein, J. P., Lane and Lupiano, JJ.

Bloom, J., dissents in a memorandum as follows: This appeal is companion to the appeal in *People v MacIntosh* (70 AD2d 554). There we reversed the conviction and remanded for a new trial. Although both MacIntosh and Pitt were charged in the same indictment and tried together on the same evidence, there are salient differences in the two cases; differences which warrant an affirmance in this case. Both defendants were indicted for murder in the second degree and for criminal possession of a weapon in the second degree. At the conclusion of the case, the court, in addition to

charging the counts alleged, charged down to manslaughter in the first degree and criminal possession of a weapon in the third degree. The jury acquitted on both homicide counts and on the count of criminal possession of a weapon in the second degree. They convicted both defendants on the charge of criminal possession of a weapon in the third degree. The proof disclosed that Calbert Allen lived in an apartment on East 165th Street in The Bronx. On November 26, 1976, an argument arose at the apartment between Allen and one Robinson. Robinson, shortly to become the deceased, shot Allen in the leg. Pitt was present at the time; MacIntosh was in an apartment across the hall. After the shooting Robinson left, stating that he was going to the park. Following a short interval, Pitt left the apartment. According to Allen, he was carrying a .45 caliber automatic in his waistband. Allen also testified that MacIntosh left the apartment across the hall armed with a .38 caliber revolver. Allen proceeded to the hospital, where he received treatment for his leg. He returned home sometime thereafter and, finding that he had failed to take the key to the apartment with him, waited outside for a friend whom he had telephoned to bring the key. Approximately an hour later, Pitt and MacIntosh returned. Pitt commented that they had "licked the boy's head off", a Jamaican phrase meaning that someone had been shot in the head. MacIntosh interpolated that "the boy" was Robinson. Robinson's body was found in the park at or about that time. Near the body was a discharged cartridge which was turned over to the ballistics section of the police department. Pitt and MacIntosh were arrested about a month later in a Clinton Place apartment. At the time of their arrest, two weapons were seized, a .45 caliber automatic and a .38 caliber pistol. Tests conducted by ballistics demonstrated that the discharged cartridge found near Robinson's body on the day of the shooting came from the .45 caliber automatic. In reversing the *MacIntosh* conviction we noted that: "The trial court, in carefully couched instructions, appropriately charged the jury as to the applicable law on murder, manslaughter and criminal possession of a weapon in the second degree. In accordance with the agreement between the court and counsel, the jury was instructed, with respect to possession of a weapon in the second degree, to consider only whether defendants were in possession of the .45 caliber automatic in the park on November 16, 1978 * * * However, in instructing the jury on the lesser included offense of criminal possession of a weapon in the third degree, the court did not similarly limit the proof which the jury could consider. Instead, the court charged the jury as follows: 'You may find a defendant guilty of criminal possession of a weapon in the third degree if there is proof beyond a reasonable doubt that the defendant possessed *any* loaded firearm; mere possession is sufficient. There is no requirement to prove that the defendant intended to use this implement unlawfully against another.' " (Emphasis supplied.) We held that the use of the word "any" in conjunction with the term "loaded firearm" permitted the jury to consider the .38 caliber pistol in connection with this charge. Since no proof was ever submitted to show that on November 26, 1976, the .38 was operable, loaded or in the park, we were constrained to reverse the *MacIntosh* conviction. With respect to Pitt, however, the picture changes materially. Allen's testimony places the .45 caliber weapon in Pitt's possession. The other elements—that it was operable, loaded and in the park—are all demonstrated by the discharged cartridge found in the vicinity of Robinson's body. While this evidence is circumstantial, it is so compelling that only a single conclusion may be drawn therefrom. Nor, despite the vehement protestation of counsel at the time of sentence, was there any possibility that the jury

could have been confused by the fact that the police found the weapon in the vicinity of Pitt when he was arrested on December 24, 1976 at the Clinton Place apartment. Both defense counsel, in his summation, and the court, in his charge, made clear that the possession which was, in part, the subject matter of the trial, was the possession in the park on November 26, 1976. Inasmuch as all the elements of proof missing in *MacIntosh* are here present, the inadvertent slip by the court in referring to *any* weapon when it charged criminal possession of a weapon in the third degree could not possibly have misled the jury. I find the error harmless beyond a reasonable doubt. Accordingly, I would affirm.